**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **JOUREY NEWELL**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**FOLEY CARRIER SERVICES, LLC**,<br><br>*Defendant.* | Case No. 3:25-cv-2043-KAD<br><br>February 17, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
<u>FOLEY CARRIER SERVICES, LLC'S MOTION TO DISMISS</u>**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

THE APPLICABLE STANDARDS .................................................................................... 4

ARGUMENT ...................................................................................................................... 5

   I.    NEWELL'S DNC CLAIM (COUNT I) FAILS TO STATE A CLAIM. ............................ 5

      A.   THE DNC PROVISION IS NOT APPLICABLE TO CELL PHONES. ................................... 5

      B.   PLAINTIFF FAILS TO PLEAD PLAUSIBLE FACTUAL ALLEGATIONS THAT HIS PURPORTED CELL PHONE IS "RESIDENTIAL." ................................................................... 10

      C.   THE DNC PROVISION IS NOT APPLICABLE TO TEXT MESSAGES. ............................... 12

      D.   NEWELL FAILS TO PLEAD THAT ANY OF TEXT MESSAGES WERE "TELEPHONE SOLICITATIONS" WITHIN THE MEANING OF THE DNC PROVISION. ............................... 14

   II.    NEWELL'S CALLER ID CLAIM (COUNT II) FAILS TO STATE A COGNIZABLE CLAIM. .................................................................................................................... 15

      A.   THERE IS NO PRIVATE RIGHT OF ACTION FOR A VIOLATION OF 47 C.F.R. §64.1601(E). 15

      B.   PLAINTIFF DOES NOT PLEAD ANY INJURY FOR A TECHNICAL VIOLATION OF THE CALLER ID RULE AND THUS LACKS ARTICLE III STANDING. ................................................... 17

CONCLUSION .................................................................................................................. 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)..................................................................................................4

*Avon Nursing & Rehab. v. Becerra*,
      119 F.4th 286 (2d Cir. 2024) ...............................................................................7, 16

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007)................................................................................................14

*Callier v. GreenSky, Inc.*,
      No. EP-20-CV-00304-KC, 2021 WL 2688622 (W.D. Tex. May 10, 2021) ......................7, 9

*Collier v. Aksys Ltd.*,
      No. 3:04CV1232(MRK), 2005 WL 1949868 (D. Conn. Aug. 15, 2005)..........................4, 11

*Cunningham v. Sunshine Consulting Grp., LLC*,
      No. 3:16-2921, 2018 WL 3496538 (M.D. Tenn. July 20, 2018)..................................9

*Davis v. CVS Pharmacy, Inc.*,
      797 F. Supp. 3d 1270 (N.D. Fla. 2025).................................................................13, 14

*Davis v. Supervisor*,
      No. 3:21-CV-00648(SVN), 2022 WL 3681558 (D. Conn. Aug. 25, 2022) ............................4

*Dobronski v. Juliasangel Mkt., LLC*,
      No. 2:24-CV-12379, 2025 WL 2659265 (E.D. Mich. Sept. 17, 2025) ...................................15

*Dobronski v. Selectquote Ins. Servs.*,
      462 F. Supp. 3d 784 789–90 (E.D. Mich. 2020)......................................................16

*Dobronski v. SunPath Ltd.*,
      No. 19-13094, 2020 WL 8840311 (E.D. Mich. July 27, 2020)..............................16

*Dobronski v. Total Ins. Brokers, LLC*,
      No. 21-10035, 2021 WL 4452218 (E.D. Mich. Sept. 29, 2021).............................16

*Facebook, Inc. v. Duguid*,
      592 U.S. 395 (2021) ...............................................................................................12

*Gaker v. Q3M Ins. Sols.*,
      No. 3:22-CV-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) .........................9

*Gillam v. Reliance First Cap., LLC,*
 No. 21-CV-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ...........................................10

*Guthrie v. Rainbow Fencing, Inc.,*
 113 F.4th 300 (2d Cir. 2024) .............................................................................................2, 5

*Hicks v. Alarm.com Inc.,*
 No. 1:20-CV-532, 2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ...........................................10

*Horton v. Tarrant Cnty. Hosp. Dist.,*
 2022 WL 702536 (N.D. Tex. Feb. 4, 2022) .........................................................................15

*Howard v. Republican Nat'l Comm.,*
 164 F.4th 1119 (9th Cir. 2026) ...........................................................................................13

*Johnson v. Palmer Admin. Servs., Inc.,*
 No. 6:22-CV-00121, 2022 WL 17546957 (E.D. Tex. Oct. 20, 2022) ....................................9

*Jones v. Blackstone Med. Servs., LLC,*
 792 F. Supp. 3d 894 (C.D. Ill. 2025) ..............................................................................12, 13

*Katz v. CrossCountry Mortg., LLC,*
 No. 1:22-CV-00925, 2022 WL 16950481 (N.D. Ohio Nov. 15, 2022).................................14

*Lee v. Loandepot.com, LLC,*
 No. 14-CV-01084, 2016 WL 4382786 (D. Kan. Aug. 17, 2016) ...........................................10

*Leyse v. Bank of Am. Nat'l Ass'n,*
 804 F.3d 316 (3d Cir. 2015).................................................................................................1

*Loper Bright Enterprises v. Raimondo,*
 603 U.S. 369 (2024).................................................................................................6, 9, 13

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.,*
 606 U.S. 146 (2025)..................................................................................................6, 13

*Meyer v. Cap. All. Grp.,*
 No. 15-CV-2405, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017)............................................16

*Owens v. Starion Energy, Inc.,*
 No. 3:16-CV-01912 (VAB), 2017 WL 2838075 (D. Conn. June 30, 2017) ..........................11

*Perez v. Ahlstrom Corp.,*
 No. 10-cv-1299, 2011 WL 2533801 (D. Conn. June 27, 2011) ...........................................10

*Salcedo v. Hanna,*
 936 F.3d 1162 (11th Cir. 2019), abrogated by *Drazen v. Pinto*, 74 F.4th 1336
 (11th Cir. 2023)..................................................................................................................12

*Sayed v. Naturopathica Holistic Health, Inc.*,
    No. 8:25-cv-00847, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ........................ 13

*Shelton v. Fast Advance Funding, LLC*,
    378 F. Supp. 3d 356 (E.D. Pa. 2019) ................................................... 7, 9

*Shelton v. Target Advance LLC*,
    No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ............................ 11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................ 17

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ............................................................... 4

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F. Supp. 3d 782 (W.D. Pa. 2016) .................................................... 1

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .......................................................................... 5

*Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*,
    603 F. Supp. 3d 1334 (S.D. Fla. 2022) .................................................. 7

*Worsham v. Travel Options, Inc.*,
    No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016) ..................... 2, 15

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ........................................................................ 16

**Statutes**

47 U.S.C. § 227 ................................................................................... *passim*

*Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243, 105 Stat.
    2394, § 2(6) (1991) ................................................................. 5, 8, 13

**Other Authorities**

47 C.F.R. § 64.1200 ............................................................... 4, 6, 10, 14

47 C.F.R. § 64.1601 ............................................................ 2, 4, 15, 16, 17

137 Cong. Rec. S16205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings) ............. 8

137 Cong. Rec. S16208 (daily ed. Nov. 7, 1991) (statement of Sen. Bentsen) .............. 8

Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 68 Fed. Reg.
    44,144 (July 25, 2003) ...................................................................... 6

*S. 1462, the Automated Telephone Consumer Protection Act of 1991: Hearings on S. 875, 1410, and 1462 Before the Subcomm. on Communications of the Senate Comm. on Commerce, Science, and Transportation*, 102nd Cong. 3 (1991) ...................................................................................................................8

Dept. of Trans., *SAFER Data Field Names*, https://safer.fmcsa.dot.gov/saferhelp.aspx#Phone (last visit Feb. 16, 2026)..........................11

*The First Text Message Celebrates 25 Years*, NAT'L PUB. RADIO (Dec. 4, 2017), https://www.npr.org/2017/12/04/568393428/the-first-text-messages-celebrates-25-years ...................................................................................................12

## INTRODUCTION

This is one of more than two dozen federal lawsuits where Plaintiff Jourey Newell ("Plaintiff") purports to assert claims against a defendant for violation of the Telephone Consumer Protection Act ("TCPA").[1]  Here, Foley Carrier Services, LLC ("Foley") – a business that assists truckers and commercial carriers with compliance with applicable Department of Transportation ("DOT") regulations and requirements – is Plaintiff's latest target.  He purports to assert two claims against Foley for violations of the TCPA arising from fifteen text messages Foley allegedly sent to a cellular telephone number Plaintiff publicly holds out as the number for his commercial carrier (trucking) company – Newell Contracting, LLC ("Newell Contracting").[2]  As demonstrated below, however, neither states a cognizable claim, and so this meritless lawsuit must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

For his first claim, Plaintiff alleges that Foley violated the TCPA's restrictions on making calls for solicitation or marketing purposes to residential telephone numbers properly registered on the National Do Not Call Registry ("DNC Registry") without prior invitation or permission.

---

[1] *See, e.g.*, *Newell v. Digitire Pros., LLC*, No. 3:25cv1794 (D. Conn. Oct. 23, 2025); *Newell v. Hoffenmer Inc.*, No. 1:25cv3961 (N.D. Ill. Apr. 11, 2025); *Newell v. JR Cap., LLC*, No. 2:25cv1419 (E.D. Pa. Mar. 17, 2025);  *Newell v. Hawthorne Bus. Cap. Inc.*, No. 2:25cv962 (E.D. Pa. Feb. 24, 2025).

[2] Plaintiff's other TCPA lawsuits arise from similar allegations, raising the specter that he engages in conduct to invite calls or texts from businesses so that he can file TCPA lawsuits against them in an attempt to extort a quick settlement.  In the event this lawsuit proceeds beyond the motion-to-dismiss stage (and it should not), Foley reserves all rights to seek appropriate relief from this Court arising from Plaintiff's improper litigation-generation conduct.  Indeed, faced with evidence of such conduct, federal courts have not hesitated to dismiss TCPA claims like Plaintiff's here. *See, e.g.*, *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016) (finding that calls to cellphones maintained solely for the purpose of generating legal claims could not support prudential standing); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015) (explaining that "only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] violation" and that "[s]omeone with a generalize interest in punishing telemarketers, for example, would not qualify on that basis alone").

Complaint ("Compl.") ¶¶ 47–52 (Dkt. 1) (citing 47 U.S.C. § 227(c)(2) (the "DNC Provision")). This claim fails for at least four independent and adequate reasons:

(1)    Text messages to cell phone numbers fall outside the protection of the DNC Provision because they are not made to a "residential" telephone number;

(2)    Public DOT records of which this Court may take judicial notice in resolving this Motion demonstrate that Plaintiff's purported "cell phone number" is not a residential telephone number properly registered on the DNC Registry, but rather a business line for Newell Contracting;

(3)    The challenged text messages are not "calls" within the scope of the restrictions in the DNC Provision; and

(4)    Plaintiff fails to plead the requisite plausible factual allegations that the challenged text messages were made for solicitation or marketing purposes—instead, the screenshots for six of the messages Plaintiff includes in the Complaint reveal that their purpose was informational and educational in nature.

For his second claim, Plaintiff alleges that the challenged text messages did not contain the caller identification ("Caller ID") information purportedly required under 47 C.F.R. § 64.1601(e). This claim fails at its inception because it is well-settled that there is no private right of action for violations of the regulations requiring the transmission of Caller ID information. *See, e.g.*, *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017). In addition, even if there were, Plaintiff fails to allege any cognizable injury fairly traceable to the alleged violation, and so lacks Article III standing to assert the claim. *See, e.g.*, *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 305 (2d Cir. 2024).

2

For these and the additional reasons set forth below, this Court should grant this Motion and dismiss Plaintiff's Complaint.

## BACKGROUND[3]

Foley provides DOT compliance and other support services to truckers and commercial carriers. Compl. ¶ 5. Newell is an individual residing in Pennsylvania. *Id.* ¶ 4. He maintains a trucking/carrier business – Newell Contracting. Ex. A–D.[4] In connection with his business, Plaintiff maintains an active Motor Carrier Industry Entity registration with DOT. Ex. A. The telephone number listed by Plaintiff on that DOT registration for his business is the same phone number he alleges, in conclusory fashion, is "his residential, non-commercial telephone" in the Complaint. Compl. ¶ 17.

Newell brought this lawsuit on December 9, 2025. *See* Compl. He claims that over a nearly two-year period from February 2024 to December 9, 2025, he received fifteen text messages from Foley to "his" purported "cell phone." *Id.* ¶¶ 20–22. He alleges that his purported cell phone number "ha[d] been listed on the [DNC] Registry" for "over a year prior to" his receipt of the challenged text messages. *Id.* ¶¶ 17–21. The Complaint contains purported screenshots of only six of the alleged fifteen text messages, and otherwise contains no factual allegations about content of the remaining nine. *See id.* ¶ 23. Newell also alleges that none of the challenged text messages contained "the Defendant's name or telemarketer's name" or "a telephone number that permits 'any individual to make a do-not-call request during regular business hours.'" *Id.* ¶¶ 27–32.

---

[3] As it is required to do for purposes of this Motion, Foley assumes the well-pled factual allegations in Complaint to be true, reserving its rights to contest those allegations in the future if necessary. Fed. R. Civ. P. 12(b)(6).

[4] Exhibits A–D are exhibits to the Declaration of Jacqueline Odum in Support of Foley's Request for Judicial Notice ("RJN").

As noted, based on these allegations, Newell purports to bring two claims against Foley for violations of 47 U.S.C. § 227(c).  Count I alleges that Foley violated Section 227(c) of the TCPA and its implementing regulations at 47 C.F.R. § 64.1200(c) – The DNC Provision – by "causing multiple telephone solicitation calls to be initiated" to him at the telephone number he listed on the DNC Registry.  *Id.* ¶¶ 47–52.  Count II purports to predicate a different Section 227(c) claim on Foley's purported violation of 47 C.F.R. § 64.1601(e) because Foley allegedly sent the at-issue text messages to Newell "without transmitting the name of the telemarketer" and from numbers that did not allow individuals "to make a do-not-call request during regular business hours."  *Id.* ¶¶ 53–59.

## THE APPLICABLE STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Accordingly, Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Davis v. Supervisor*, No. 3:21-CV-00648(SVN), 2022 WL 3681558, at *3 (D. Conn. Aug. 25, 2022) (quoting *Iqbal*, 556 U.S. at 678).  A plaintiff cannot, however, meet this burden by pleading "legal conclusions and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'"  *Id.* (quoting *Iqbal*, 556 U.S. 678).  In determining whether a plaintiff has met their pleading burden, a court may consider information and materials that are properly subject to judicial notice.  *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  Indeed, a court is not required to assume the truth of allegations "contradicted . . . by facts of which [it] may take judicial notice."  *Collier v. Aksys Ltd.*, No. 3:04CV1232(MRK), 2005 WL 1949868, at *12 n.7 (D. Conn. Aug. 15, 2005), *aff'd*, 197 F.App'x 770 (2d Cir. 2006).

4

Additionally, a plaintiff must adequately allege Article III standing for each claim they assert.  To establish Article III standing, a plaintiff "must show (i) that they suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Furthermore, a plaintiff "cannot rely on 'technical violations'" of a statute to meet their burden under Article III, "but must allege actual injuries suffered as a result" of the alleged statutory violations.  *Guthrie*, 113 F.4th at 305 (2d Cir. 2024).  In other words, a plaintiff cannot meet their Article III standing burden without pleading "a current or past harm *beyond the statutory violation itself.*"  *Id.* at 306 (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022)).

## ARGUMENT

## I.    NEWELL'S DNC CLAIM (COUNT I) FAILS TO STATE A CLAIM.

Count I for violation of the DNC Provision fails to state a cognizable claim for at least four independent and adequate reasons.

### A.    THE DNC PROVISION IS NOT APPLICABLE TO CELL PHONES.

First, under a plain reading of the statutory language, text messages to a cell phone number are not within the scope of the DNC Provision.

Enacted in 1991, and codified at 47 U.S.C. § 227, Congress passed the TCPA to address "the proliferation of intrusive, nuisance calls to *[American's] homes.*"  *Telephone Consumer Protection Act of 1991*, Pub. L. No. 102-243, 105 Stat. 2394, § 2(6) (1991) (emphasis added).  Consistent with that stated purpose, Section 227(c) of the TCPA authorizes the Federal Communications Communication ("FCC") to promulgate certain regulations "concerning the need to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations."  47 U.S.C. § 227(c)(1) (emphasis added).  The Act's rulemaking provisions

expressly contemplate the FCC's creation of "a single national database to compile a list of telephone numbers of ***residential subscribers*** who object to receiving telephone solicitations" and prohibition of "telephone solicitation[s] to the telephone number of any subscriber included in such database." *Id.* § 227(c)(3)(F) (emphasis added). As relevant here, the TCPA does not define the terms "residential telephone subscribers" or "residential subscribers." *See id.* § 227.

Pursuant to Section 227(c)(3), the FCC created the DNC Registry in 2003. 47 C.F.R. § 64.1200(c); Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 68 Fed. Reg. 44,144 (July 25, 2003). When it did so, however, the FCC exceeded its authority and expanded the TCPA's privacy protections to include certain cellular telephone subscribers. *Id.* at 44,146 ("the national database should allow for the registration of wireless telephone numbers"). In so doing, the FCC noted that not all cellular phone subscribers are necessarily "residential subscribers":

> As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

*Id.* at 44,146–47.

Newell's DNC Provision claim in Count I is premised on the FCC's interpretation that certain cellular telephone subscribers are "residential subscribers." Recent Supreme Court precedent, however, counsels this Court to reject this interpretation. Specifically, following its decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court held in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 162 (2025) that district courts must independently interpret the TCPA under ordinary principles of statutory

interpretation, giving only "appropriate respect" (*i.e.*, not absolute deference) to the FCC's statutory interpretations.    Therefore, the determination of whether "residential telephone subscribers" should include cell phone subscribers requires an independent review by this Court and not automatic deference to the FCC's interpretation.

Here, the plain and unambiguous language of the TCPA indicates that cell phone subscribers are not "residential telephone subscribers" entitled to DNC Provision protections. *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021) (TCPA "applies to 'residential telephone subscribers' and does not apply to cell phones"). As one court succinctly noted, "the plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020).    Consistent with this, the TCPA itself "clearly draws a distinction between cellular telephones and residential telephones."    *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2022).    The statutory text includes the term "cellular telephone" in some sections and omits it from others, including Section 227(c).    *Contrast* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting certain prerecorded calls to "any telephone number assigned to a … cellular telephone service") *with id.* § 227(b)(1)(B) (prohibiting the same prerecorded calls to "any residential telephone line") *and id.* § 227(b)(2)(H) (permitting the FCC to limit the number and duration of debt collection calls made to a number assigned to a "cellular telephone service" but omitting any reference to debt collection calls made to residential telephone lines).    A proper interpretation of the statute would conclude that Congress's omission of "cellular telephone" from Section 227(c) was intentional, thus foreclosing FCC expansion of DNC Provision coverage to calls made to cell phones. *See Avon Nursing & Rehab. v. Becerra*, 119 F.4th

286, 292 (2d Cir. 2024) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Such a conclusion is fatal to Plaintiff's cell phone-based TCPA claim in Count I here.

The conclusion that cell phones are not residential lines within the scope of the DNC Provision is reinforced by Congress' findings in enacting the Provision in 1991. Indeed, those findings reflect a Congressional concern for privacy within the sanctity of the home, with primary concerns over the disruption to the family dinner by uninvited phone calls. Pub. L. No. 102-243, § 2(5)–(6) ("Unrestricted telemarketing . . . can be an intrusive invasion of privacy," and "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers."); *see also S. 1462, the Automated Telephone Consumer Protection Act of 1991: Hearings on S. 875, 1410, and 1462 Before the Subcomm. on Communications of the Senate Comm. on Commerce, Science, and Transportation*, 102nd Cong. 3 (1991) (statement of Sen. Hollings) (TCPA sponsor referring to phones purchased "for the convenience of the individual home-owner" and to the need to protect such individuals' privacy specifically in the home.); 137 Cong. Rec. S16205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings) ("[c]omputerized calls . . . wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."); 137 Cong. Rec. S16208 (1991) (statement of Sen. Bentsen) (TCPA sponsor distinguishing "unsolicited automated calls to the home" to "automated calls to . . . cellular telephones."). By contrast, cell phones are often taken outside of the home, have settings to silent ringers, and have integrated text and call-blocking technologies and applications to protect one's privacy. Unlike the landlines of 1991, cell

8

phones simply do not implicate the type of in-home nuisance the TCPA's DNC Provision was designed to prevent.

Put simply, this Court should follow the lead of other courts and reject the FCC's improper interpretation of the DNC Provision as extending to cell phones, follow the language of the statute at the time it was enacted in light the Congressional findings accompanying the TCPA, and dismiss Count I. *See Loper Bright*, 603 U.S. at 400 ("That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" (quoting *Wisc. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)); *see also Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023) ("The structure and language of the TCPA controvert coverage of cell phones. . . . the authority rests with Congress to amend the TCPA and bring cell phones within its protections."); *Callier*, 2021 WL 2688622, at *6 (dismissing Section 64.1200(d)(1) claim "because this regulation applies to 'residential telephone subscribers' and does not apply to cell phones"); *Shelton*, 378 F. Supp. 3d at 362 n.7 ("The Court, therefore, is not convinced that Congress and the FCC, through the TCPA and its regulations, intended to protect "cellular telephone subscribers" along with "residential telephone subscribers."); *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (granting dismissal because "[t]he private right of action created by 47 U.S.C. § 227(c)(5) provides for redress of violations of the regulations that concern residential telephone subscribers" and "Plaintiff alleges only calls to his cellular phone"); *Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-CV-00121, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022) ("The majority of the persuasive precedent holds [the TCPA] does not encompass cell phones.") (collecting cases).

### B.    PLAINTIFF FAILS TO PLEAD PLAUSIBLE FACTUAL ALLEGATIONS THAT HIS PURPORTED CELL PHONE IS "RESIDENTIAL."

Second, even assuming *arguendo* that the TCPA's DNC Provision extends to cell phones, Newell fails to allege the requisite plausible factual allegations establishing that his cell phone is used for "residential" purposes only, such that he is a "residential telephone subscriber" within the meaning of the FCC's regulation.    47 C.F.R. § 64.1200(c)(2).    In fact, public DOT records for which this Court may take judicial notice in resolving this Motion[5] reflect that Plaintiff's number is, in fact, a business number for his company – Newell Contracting.

In the cell phone context, courts have interpreted "residential telephone subscriber" as requiring factual allegations and, eventually, proof that the number called was "*actually* used for 'residential purposes.'"  *See, e.g.*, *Gillam v. Reliance First Cap., LLC*, No. 21-CV-4774, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (emphasis added); *Lee v. Loandepot.com, LLC*, No. 14-CV-01084, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016) ("Plaintiff must establish that his cellular number is used for residential purposes.").    Here, however, Newell pleads no such factual allegations.    Instead, Newell offers only the conclusory assertions that the at-issue telephone number is "a residential, non-commercial telephone number" used for "personal, residential, and household reasons."  Compl. ¶¶ 17–18.    This not enough to sustain his pleadings burden as a matter of law.  *See, e.g.*, *Gillam*, 2023 WL 2163775 at *4 (dismissing TCPA claim where "Complaint contains conclusory allegations that his cell phone number was not 'associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use'" and "fails to specifically allege any facts from which the Court could infer that the phone number is used for

---

[5] *See, e.g.*, *Perez v. Ahlstrom Corp.*, No. 10-cv-1299, 2011 WL 2533801, at *287 (D. Conn. June 27, 2011) ("the Court may . . . properly consider 'matters of which judicial notice may be taken,' including information on an official government website" (quoting *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999))).

residential purposes"); *Hicks v. Alarm.com Inc.*, No. 1:20-CV-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (dismissing TCPA claim based on plaintiff's failure to articulate – despite his allegations that the subject cellphone number was "not associated with a business and [was] for personal use" – any factual support for the "residential telephone subscriber" element of his claim).

Plaintiff's pleadings failure is not surprising given that he himself held out his alleged "cell phone number" as "[t]he company telephone number at the principal place of business" for his trucking/carrier company on the DOT's public registry of Motor Carrier Industry Entities.[6] Ex. A. "[A] telephone line's initial registration [on the DNC Registry] as 'residential' [i]s not necessarily sufficient to ensure TCPA protection if the line is actually held out as a business line: A telephone subscriber who registers a line with the telephone company as a residential line but then lists the number in the Yellow Pages and other directories as a business line sacrifices the protections afforded by the TCPA." *Owens v. Starion Energy, Inc.*, No. 3:16-CV-01912 (VAB), 2017 WL 2838075, at *3 (D. Conn. June 30, 2017) (discussing the rule applied in *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014)). Newell cannot hold his alleged telephone number out as a business line in a public DOT registry and still claim TCPA protections reserved for residential telephone subscribers. *Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) ("business numbers are not permitted to be registered on the National [DNC] Registry"). Simply put, his use and disclosure of the telephone phone number with the DOT for his business – Newell Contracting – renders his conclusory assertions about its purported residential purpose implausible and insufficient to sustain

---

[6]    U.S. Dep't of Trans., *SAFER Data Field Names*, https://safer.fmcsa.dot.gov/saferhelp.aspx#Phone (last visit Feb. 10, 2026) (defining "company" as "Motor Carrier Industry Entity" and "Phone" as "[t]he company telephone number at the principal place of business").

his claim in Count I.  *Cf. Collier*, 2005 WL 1949868 at *12 n.7 (court need not assume the truth

of allegations "contradicted . . . by facts of which [it] may take judicial notice").

    **C.**        **THE DNC PROVISION IS NOT APPLICABLE TO TEXT MESSAGES.**

Third, even assuming *arguendo* that the DNC Provision extends to cell phones and

Newell's allegations are sufficient to plead that his cell phone is a residential line, his claim in

Count I still fails because text messages are not "telephone calls" within the meaning of the DNC

Provision.

By its express language, the DNC Provision extends only to "telephone calls."  *Jones v.*

*Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) ("Section 227(c)(5)

simultaneously explicitly refers to a 'telephone call', a term not defined in the statute itself, and

remains silent as to its application to text messages.").  And the TCPA itself is silent on whether

text messages qualify as telephone calls.  *Id.*  Indeed, writing for the Supreme Court in *Facebook,*

*Inc. v. Duguid*, Justice Thomas quoted the at-issue TCPA provision about "calls" and then observed

in a footnote that because "[n]either party disputes that the TCPA's prohibition also extends to

sending unsolicited text messages . . . , [w]e therefore assume that it does without considering or

resolving the issue." 592 U.S. 395, 400 n.2 (2021) (internal citation omitted).  The Court's decision

to leave the issue unresolved in *Facebook v. Duguid* is not surprising because at the time the TCPA

was enacted in 1991, text messaging did not exist.  *Jones*, 792 F. Supp. 3d at 899; *see also Salcedo*

*v. Hanna*, 936 F.3d 1162, 1166–69 (11th Cir. 2019), *abrogated by Drazen v. Pinto*, 74 F.4th 1336

(11th Cir. 2023)  ("The TCPA is completely silent on the subject of unsolicited text messages. Of

course, text messaging in its current form did not exist in 1991 when the TCPA was enacted ….");

*see also The First Text Message Celebrates 25 Years*, NAT'L PUB. RADIO (Dec. 4, 2017),

https://www.npr.org/2017/12/04/568393428/the-first-text-messages-celebrates-25-years     ("The

first text message was transmitted Dec. 3, 1992.").  Moreover, text messages also do not present

the same potential for nuisance and home privacy intrusion that Congress was addressing when it passed the TCPA in 1991: the brief chirp or vibration of a single text is not the equivalent of the nonstop ringing of a home telephone line.  *See Jones*, 792 F. Supp. 3d at 899.  Indeed, Congress has amended the TCPA eight times since its enactment, including as recently as 2019, without ever adding text messaging to the categories of restricted telemarketing or communication activity. Pub. L. No. 102-243  (1991) (amended 1992, 1994); 47 U.S.C. § 227 (amended 2003, 2005, 2010, 2015, 2018, 2019).  These amendments came and went notwithstanding the proliferation of text messaging in modern day communication.

Following *Loper Bright's* and *McLaughlin's* abolition of agency deference (*supra*, at p. 6), numerous federal courts are considering the issue Justice Thomas identified and eschewing prior FCC guidance in favor of straight statutory interpretation to conclude the TCPA does not apply to text messaging.  *Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages."); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272–73 (N.D. Fla. 2025) ("the statutory text [] is clear and a text message is not a 'telephone call.'"); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("a 'telephone call' and a 'text message' are separate and distinct forms of communication" and Section 227(c)'s "omission of 'text message' … confirms that the provision applies only to a 'telephone call'"). This Court should do the same.  That is because, under a plain reading of the TCPA, the term "telephone call" does not encompass text messages.  *Id.*  As one federal court explained:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis*, 797 F. Supp. 3d at 1272–73.[7]

Here, Newell predicates his DNC Provision claim in Count I on the challenged fifteen text messages, and pleads no factual allegations about any actual telephone calls received from Foley. Compl. ¶¶ 22–23. These text messages are not "telephone calls" within the scope of the DNC Provision, and so Count I should be dismissed.

### D.    NEWELL FAILS TO PLEAD THAT ANY OF TEXT MESSAGES WERE "TELEPHONE SOLICITATIONS" WITHIN THE MEANING OF THE DNC PROVISION.

Finally, Count I should be dismissed because Newell fails to plead the requisite plausible factual allegations that any of the challenged fifteen text message were "telephone solicitations" within the meaning of the DNC Provision. That Provision does not restrict all telephone calls to a cell phone. It only restricts certain telephone calls made for a solicitation or marketing purposes. 47 C.F.R. § 64.1200(c). A "telephone solicitation" is defined as one made for the "purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4)(i); 47 C.F.R. § 64.1200(f)(15).

Of the fifteen purported text messages, Newell pleads no factual allegations about the content or purpose of nine of them. *See Twombly*, 550 U.S. at 570; *Katz v. CrossCountry Mortg., LLC*, No. 1:22-CV-00925, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022) ("Without factual allegations as to the content of these calls, Plaintiff's FAC fails to properly allege that such calls were solicitations under the TCPA."). The remaining six, which appear in screenshots at Compl. ¶ 23, do not facially evince a purpose to encourage Newell to "purchase or rent" or "invest" in any

---

[7] Foley acknowledges that some federal courts have concluded – post-*Loper Bright* and *McLaughlin* – that TCPA extends to text messages. *See, e.g.*, *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026). Neither this Court nor the Second Circuit have addressed the issue, however, and Foley respectfully submits that the reasoning and conclusions the courts concluding that the TCPA does not extend to text messages is more persuasive, particularly in light of the express statutory language, the statutory purpose as expressed by Congress, and the lack of text messaging at the time of the statute's enactment in 1991.

goods or services.  Rather, the content of those text messages are informational and educational. *Id.*  Four of those text messages remind Newell about the "2025 UCR filing period," the "FMCSA safety audit," the "UCR 2026 filing period," and to check his status on "UCR non-compliance." *Id.*  The other two text messages inform Newell that "[his] DOT number is Out of Service."  *Id.* Relying only on the facial content of these text messages, Newell pleads no other factual allegations sufficient to carry his burden to establish any marketing or solicitation purpose to any them.  *See Horton v. Tarrant Cnty. Hosp. Dist.*, 2022 WL 702536, at *3 (N.D. Tex. Feb. 4, 2022) (granting dismissal where "the express language of the text at issue is purely informative – it does not seek to entice Plaintiff to purchase, rent, or invest in the COVID-19 vaccine or any other property, goods, or service").  That failure is fatal Count I, because the Complaint is devoid of plausible factual allegations sufficient to plead the "telephone solicitation" purpose element of the claim.

## II.  NEWELL'S CALLER ID CLAIM (COUNT II) FAILS TO STATE A COGNIZABLE CLAIM.

Plaintiff's claim in Count II must be dismissed for two independent reasons.

### A.  THERE IS NO PRIVATE RIGHT OF ACTION FOR A VIOLATION OF 47 C.F.R. § 64.1601(E).

First, while Count II alleges Foley violated 47 C.F.R. § 64.1601(e)'s requirements by not transmitting certain Caller ID information in the challenged text messages (Compl. ¶¶ 53–59), there is no private right of action for violations of that regulation.  Indeed, the majority of federal courts have so concluded in dismissing TCPA claims like Plaintiff's here. *Worsham*, 2016 WL 4592373, at *7 ("The FCC's rule in §64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim"); *Dobronski v. Juliasangel Mkt., LLC*, No. 2:24-CV-12379, 2025 WL 2659265 at *11 (E.D. Mich. Sept. 17, 2025) ("A majority of courts have held that

§64.1601(e) was promulgated under 47 U.S.C. §227(d), which does *not* include a private right of action") (collecting cases); *Dobronski v. Total Ins. Brokers, LLC*, No. 21-10035, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021) ("the persuasive authority holds that there is no private right of action for violations of § 64.1601(e), and therefore adopts the recommendation to dismiss Count II of Plaintiff's amended complaint failure to state a claim."); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784 789–90 (E.D. Mich. 2020); *Dobronski v. SunPath Ltd.*, No. 19-13094, 2020 WL 8840311, at *6–*7 (E.D. Mich. July 27, 2020).[8] This Court should follow their lead and dismiss Count II. Where it intends to create a private right of action for a statutory or regulatory violation, Congress will be explicit. *Meyer v. Cap. All. Grp.*, No. 15-CV-2405, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017); *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) ("Congress will be explicit if it intends to create a private cause of action."). Here, Congress' silence is telling and confirms the absence of any private right of action for alleged violations of Section 64.1601(e). Indeed, while Congress expressly provided a private right of action for violations of regulations promulgated under 47 U.S.C. § 227(c), it did not do so for regulations promulgated under 47 U.S.C. § 227(d) like Section 64.1601(e). *Contrast* 47 U.S.C. § 227(c)(5) *with id.* § 227(d)(1)–(3); *see also Avon Nursing & Rehab.*, 119 F.4th at 292 ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." (quoting *Russello*, 464 U.S. at 23)).

---

[8] Count II is also defective because, as demonstrated in Section II(D) above, Plaintiff fails to plead plausible factual allegations of any telephone solicitations by Foley. *Supra*, at pp. 14–15. Section 64.1601(e) extends only to telemarketers – *i.e.,* companies making telephone calls for marketing/solicitation purposes. 47 C.F.R. § 64.1601 ("Any person or entity that engages in telemarketing . . . must transmit caller identification information."). Here, however, there are no factual allegations to conclude that Foley was acting as a "telemarketer" with respect to Newell.

16

### B.    PLAINTIFF DOES NOT PLEAD ANY INJURY FOR A TECHNICAL VIOLATION OF THE CALLER ID RULE AND THUS LACKS ARTICLE III STANDING.

Second, even assuming *arguendo* that there were a private right of action, Newell fails to plead the requisite factual allegations of any cognizable injury to him traceable to the alleged violation of Section 64.1601(e) as is necessary to establish Article III standing to sue.

As noted, to satisfy Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, in conclusory assertions that are insufficient to sustain to his pleadings burden, Newell alleges only three "harm[s]" from Foley's alleged conduct: (i) "[his] privacy has been violated," (ii) he was "annoyed and harassed," and (iii) the text messages "occupied [his] telephone line[], storage space, and bandwidth, rendering [him] unavailable for legitimate communication, including while driving, working, performing other critical tasks." Compl. ¶ 38. But none of these alleged harms are fairly traceable to his lack of certain Caller ID information, particularly where the content of the at-issue text messages provided him with the information he sought from Caller ID—*i.e.*, the "name" of the sender and the ability "to make a do-not-call request during regular business hours" by simply texting "STOP to opt out." Compl. ¶ 23. He thus lacks Article III standing to pursue his claim in Count II.

### CONCLUSION

For all the foregoing reasons, this Court should grant this Motion and dismiss the Complaint.

Dated:  February 17, 2026

Respectfully submitted,

/s/ Brooks R. Brown
Brooks R. Brown (*phv209167*)
GOODWIN PROCTER LLP
100 Northern Ave
Boston, MA 02210
Tel.: +1 617 570 1000
BBrown@goodwinlaw.com

Jaime A. Santos (ct31237)
Jacqueline Odum (*phv209169*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
JSantos@goodwinlaw.com
JOdum@goodwinlaw.com

*Counsel for Foley Carrier Services, LLC*

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 17, 2026, I caused a true and correct copy of the foregoing

to be served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Brooks R. Brown*
Brooks R. Brown
