## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

**JOUREY NEWELL**, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

**FOLEY CARRIER SERVICES, LLC**,

*Defendant.*

Case No. 3:25-cv-2043-KAD

March 24, 2026

## REPLY IN SUPPORT OF DEFENDANT
## <u>FOLEY CARRIER SERVICES, LLC'S MOTION TO DISMISS</u>

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................... 1

I.    PLAINTIFF'S DECLARATION IS IMPROPER. ............................................... 1

II.   PLAINTIFF FAILS TO STATE A TCPA DNC CLAIM (COUNT I) .................................. 2

    A.    The DNC Provision is Not Applicable to Cell Phones. ................................................ 2

    B.    The DNC Provision is Not Applicable to Text Messages ............................................ 6

    C.    Plaintiff Fails to Plead that any of the Text Messages were "Telephone Solicitations" within the Meaning of the DNC Provision . ...........................................4

    D.    Plaintiff Fails to Plead Plausible Factual Allegations in the Complaint that his Purported Cell Phone is "Residential." ........................................................................ 6

III.  COUNT II FAILS TO STATE A CLAIM AND MUST BE DISMISSED. .......................... 8

    A.    There is no Private Right of Action for a Violation of 47 C.F.R. § 64.1601(e). ........... 8

    B.    Plaintiff Does Not Plead any Injury for a Technical Violation of the Caller ID Rule and Thus Lacks Article III Standing. ........................................................................... 9

CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avon Nursing & Rehab. v. Becerra,*
   119 F.4th 286 (2d Cir. 2024) ..............................................................................................3

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002)..............................................................................................1

*Chennette v. Porch.com, Inc.,*
   50 F.4th 1217 (9th Cir. 2022) ...........................................................................................2

*Colliton v. Bunt,*
   709 Fed.Appx. 82 (2d Cir. 2018)......................................................................................1

*Cooke v. United States,*
   918 F.3d 77 (2d Cir. 2019).................................................................................................9

*Dobronski v. Juliasangel Mkt., LLC,*
   2025 WL 2659265 (E.D. Mich. Sept. 17, 2025).............................................................8

*Dobronski v. Selectquote Ins. Servs.,*
   773 F.Supp.3d 373 (E.D. Mich. 2025).............................................................................8

*Dobrowski v. Selectquote Ins. Servs.,*
   462 F.Supp.3d 784 (E.D. Mich. 2020)..............................................................................8

*Dobronski v. Transamerica Life Ins. Co.,*
   13 N.W.3d 895 (Mich. App. 2023)...................................................................................8

*Friedl v. City of New York,*
   210 F.3d 79 (2d Cir. 2000)................................................................................................1

*Gillam v. Reliance First Cap., LLC,*
   2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)..................................................................7

*Goldman v. Belden,*
   754 F.2d 1059 (2d Cir. 1985)............................................................................................1

*Guthrie v. Rainbow Fencing, Inc.,*
   113 F.4th 300 (2d Cir. 2024) ..........................................................................................10

*Harty v. W. Point Realty, Inc.,*
   28 F.4th 435 (2d Cir. 2022) ............................................................................................10

*Jones v. Blackstone Med. Servs., LLC*,
  792 F.Supp.3d 894 (C.D. Ill. 2025) ..................................................................5

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)..........................................................................................5

*Meyer v. Cap. All. Grp.*,
  2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) .....................................................8

*New Jersey v. Bessent*,
  149 F.4th 127 (2d Cir. 2025) .........................................................................4, 5

*Radvansky v. 1-800-Flowers.com, Inc.*,
  2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ..............................................3, 4, 5

*Regan v. Vill. of Pelham*,
  2021 WL 1063320 (S.D.N.Y. Mar. 19, 2021) ................................................1, 7

*Shelton v. Fast Advance Funding, LLC*,
  378 F. Supp. 3d 356 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020) ........................2

*United States v. Kaufman*,
  2021 WL 83478 (D. Conn. Jan. 11, 2021)..........................................................3

*Wilbush v. Ambac Fin. Grp.*,
  271 F.Supp.3d 473 (S.D.N.Y. 2017)..................................................................6

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017)..........................................................................................8

*Ziparo v. CSX Transportation*, Inc.,
  15 F.4th 153, 158 (2d Cir. 2021) ......................................................................4

**Statutes**

47 U.S.C. § 227............................................................................................3, 8

**Other Authorities**

47 C.F.R. § 64.1601(e) .....................................................................................8

Kai McNamee et al., *50 Years Ago, Martin Cooper Made the First Cellphone Call*,
  NAT'L PUB. RADIO (Apr. 3, 2023), https://www.npr.org/2023/04/03/1167815751/50-
  years-ago-martin-cooper-made-the-first-cell-phone-call...........................................5

*In Re Rules & Regs. Implementing the TCPA*,
  18 F.C.C.R. 14014 ...........................................................................................8

*Rules & Regs. Implementing the TCPA of 1991,*
  68 Fed. Reg. 44144, 44166 ¶ 124 (2003)..............................................................................8, 9

Recognizing the merit of Foley's dismissal arguments, Plaintiff's Opposition relies heavily on his accompanying Declaration. That Declaration, which advances new factual assertions made nowhere in the Complaint, is improper at the Rule 12(b)(6) stage and must be disregarded by the Court. And, even assuming *arguendo* that this Court could consider the Declaration, neither it nor Plaintiff's opposition arguments can overcome the reality that his TCPA claims fail as a matter of law under the plain language of the statute (Count I), for want of a requisite factual allegations to sustain them (Count I), and for want of a private right of action or Article III standing (Count II).

**ARGUMENT**

**I.    PLAINTIFF'S DECLARATION IS IMPROPER.**

Unable to point to factual allegations in the Complaint necessary to sustain his claims, Plaintiff relies on factual assertions made for the first time in his new declaration. Opp. at Ex. 1 ("Declaration" or "Decl."); *see, e.g., id.* at 13–14. This effort need not detain this Court long and provides no legitimate basis to deny the Motion because it is entirely improper. *Regan v. Vill. of Pelham*, 2021 WL 1063320, at *4–*5 (S.D.N.Y. Mar. 19, 2021) (disregarding "factual allegations that were introduced for the first time in either Plaintiff's opposition affidavit or briefs" and describing plaintiff's reliance on such facts as "inappropriate"). Indeed, it is black-letter law that "courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss." *Colliton v. Bunt*, 709 Fed.Appx. 82, 83 (2d Cir. 2018). As the Second Circuit has explained, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether *the complaint itself* is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (emphasis added); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002); *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000). Foley's Motion (at 9–12, 14–15) demonstrates the pleadings defects in the Complaint, and Plaintiff's Declaration provides no legitimate rebuttal to that demonstration.

## II.    PLAINTIFF FAILS TO STATE A TCPA DNC CLAIM (COUNT I).

In its Motion (at 5–15), Foley demonstrated the numerous reasons why the Complaint fails to state a cognizable TCPA DNC claim (Count I). The Opposition compels no different conclusion.

### A.    THE DNC PROVISION IS NOT APPLICABLE TO CELL PHONES.

Plaintiff argues (Opp. at 6–13) that this Court should resolve the question of whether the statutory term "residential telephone subscribers" extends to cell phones by reference to whether the cell phone is "use[d] . . . for residential (*i.e.*, personal) purposes." *Id.* at 8. This argument is unpersuasive and should be rejected for two main reasons. *See also* Motion at 5–9.

First, Plaintiff's argument invites this Court to ignore the reality of telecommunications at the time of the TCPA's enactment in 1991, when cell phone use was far from prevalent. Plaintiff focuses on the 1991 meaning of various undefined terms buried in the statutory definitions of words that appear in Section 227(c), but conveniently ignores the 1991 and common-sense meaning of "residential." Opp. at 6–11. As one Circuit Judge persuasively explained in dissent in a pre-*Loper Bright* decision concerning the FCC's interpretation of the TCPA's DNC provision:

> At the time Congress enacted the TCPA, the most applicable dictionary definition for "residence" was "[a] house where one's home is; a dwelling house." *Residence, Black's Law Diction*ary, Sixth Edition (1990). The dictionary defines the word "residential" to mean "of, relating to, or connected with residence or residences." *Residential, Webster's Third New International Dictionary* (1981). Thus, a "residential telephone" is by its terms a telephone connected with a residence.

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1233 (9th Cir. 2022) (Ikuta, C.J, dissenting); *see also Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019), *aff'd*, 805 F. App'x 156 (3d Cir. 2020) ("the plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere"). No ordinary person in 1991 would have understood "residential telephones" to include cell phones taken outside of the home, and Plaintiff cannot square his argument with the 1991 Congress's

2

stated purpose in enacting the TCPA—*i.e.*, to stop the nonstop ringing of a ***home telephone*** at the family dinner table. Mot. at 8–9.[1]

Second, if, as Plaintiff suggests (Opp. at 8), the 1991 Congress understood "residential telephone subscriber" to extend to cell phones, it could have simply said so. The fact that it did not (and that several post-1991 Congresses have not) speaks volumes. In fact, when the 1991 Congress meant to extend the TCPA's autodialer/prerecorded message provision to cell phones, it did so expressly. *E.g.*, 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting certain prerecorded calls to "any telephone number assigned to a … cellular telephone service"). Canons of statutory interpretation dictate against Plaintiff's reading of the DNC Provision to extend to cell phones where other sections of the TCPA evince a "purpose" by their express terms. *See Avon Nursing & Rehab. v. Becerra*, 119 F.4th 286, 292 (2d Cir. 2024) ("Where Congress includes particular language in one section of a statute but omits it in another section of the *same* Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (emphasis added) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). This is particularly so where the DNC and TCPA autodialer/prerecorded message provisions were "passed by the exact same Congress at the exact same time." *United States v. Kaufman*, 2021 WL 83478, at *9 (D. Conn. Jan. 11, 2021) (quoting *United States v. Bittner*, 469 F.Supp.3d 709, 719 (E.D. Tex. 2020).[2]

---

[1] Using other nonbinding authority, Plaintiff attempts to distinguish some of the authorities cited by Foley in the Motion (at 8–9). While Plaintiff is correct that *Callier*—a nonbinding, out of Circuit case—was later distinguished by the same court, the distinguishing case predated *Loper Bright*'s directive that courts conduct independent statutory analysis. Many of Plaintiff's other cases predate *Loper Bright* and *McLaughlin* and fail to undertake an independent statutory analyses of the TCPA's plain language to assess whether the DNC Provision extends to cell phones. Mot. at 7–8. Foley acknowledges, however, that some federal courts have concluded—post-*Loper Bright* and *McLaughlin*— that the DNC Provision extends to cell phones, but respectfully submits that those courts wrongly decided this issue in face of the statutory language. *See, e.g., Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *2–*3 (N.D. Ga. Feb. 17, 2026). But neither this Court nor the Second Circuit have addressed the issue.

[2] Plaintiff's assertion (at 8–11) that Sections 227(b) and (c) are "different in scope and structure" is unpersuasive for the same reason. Congress's omission of "cellular telephone" from Section 227(c) (but not Section 227(b)) was intentional. Mot. at 7–8; *Kaufman*, 2021 WL 83478, at *9.

Plaintiff's remaining (and unsupported) arguments support no different conclusion. For example, Plaintiff repeatedly references purported congressional action and intent to confer broad rulemaking powers to the FCC. *See, e.g.*, Opp. at 8. But this purported action and intent evidences no Congressional intent that the term "residential telephone subscriber" in the DNC Provision should extend to cell phones. Similarly, Plaintiff confusingly argues (Opp. at 11) that another provision of Title 47 governing cell phone regulations creates a presumption that cell phone companies are "common carriers" for Section 227(c) purposes. But again, even if this presumption existed (and Plaintiff provides no authority from any court that it does), it does not provide any support to extend Section 227(c)'s "residential telephone subscriber" term to cover cell phones. *See supra*, at 2–4; Mot at 5–9.

**B.    THE DNC PROVISION IS NOT APPLICABLE TO TEXT MESSAGES.**

As demonstrated in the Motion (at 12–14), Plaintiff's claim in Count I fails for the separate and independent reason that the DNC Provision does not apply to text messages under the express language of the statute.

Relying largely on *Wilson* and other nonbinding authority pre-dating *Loper Bright* and applying *Chevron* deference to follow the FCC's interpretation that the DNC Provision extends to text messages (Opp. at 15–28),[3] Plaintiff argues that the goal of statutory interpretation is to simply "fit" modern parlance into the meaning of a term originally understood as something else by the enacting Congress. *See* Opp. at 19, 24. He is wrong. Rather, "in interpreting any statute," the Second Circuit has held that "we start with the plain meaning of the text, and absent any ambiguity, we end there too." *Ziparo v. CSX Transportation*, Inc., 15 F.4th 153, 158 (2d Cir. 2021); *see New*

---

[3] Plaintiff's cited post-*Loper Bright* cases are likewise unpersuasive because those courts' analyses are "inherently flawed," "def[y] … *Loper Bright*'s instruction that a statute's meaning is fixed at the time of enactment," and violate statutory canons by ignoring the meaningful-variation canon and using 2024 dictionaries to infer the meaning of a word as understood in 1991. *Radvansky*, 2026 WL 456919, at *3.

4

*Jersey v. Bessent*, 149 F.4th 127, 145 (2d Cir. 2025). Plaintiff makes no attempt to meaningfully engage in such a textual analysis of the term "telephone call." Instead, the Opposition (at 15–28) devotes fourteen pages to, among other things, the history of Alexander Graham Bell, TTY/TDD devices, and disability rights to nonsensically conclude that text messages have existed since the 1960s—many years before the cellphone was invented[4]—and were thus somehow contemplated by a 1991 Congress that had never sent, received, or heard of text messages. *See* Mot. at 12–14. That makes no sense and runs afoul of the Second Circuit's statutory plain language prescription.

In construing the plain language of the term "telephone call" "fixed at the time of [the TCPA's] enactment,"[5] the district court in *Jones* reasoned and concluded that:

> Under the principles of statutory interpretation, a court must start with the text of the statute to ascertain its plain meaning. Unless words are otherwise defined, they will be interpreted as taking their ordinary, contemporary, common meaning. Section 227(c)(5) simultaneously explicitly refers to a "telephone call", a term not defined in the statute itself, and remains silent as to its application to text messages. Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. Moreover, in today's American parlance, "telephone call" means something entirely different from "text message". Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages.

*Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 899–900 (C.D. Ill. 2025) (citation modified); *see also Radvansky*, 2026 WL 456919, at *3 ("The statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."). This Court should apply the same reasoning and reach the same conclusion here, and decline Plaintiff's invitation to follow FCC interpretations that ignore the plain meaning of the term "telephone call," both in 1991 and at present. *Jones*, 792 F.Supp.3d at 899–900; *see also* Mot. at 12–14.

---

[4] Kai McNamee et al., *50 Years Ago, Martin Cooper Made the First Cellphone Call*, NAT'L PUB. RADIO (Apr. 3, 2023), https://www.npr.org/2023/04/03/1167815751/50-years-ago-martin-cooper-made-the-first-cell-phone-call.

[5] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (courts must interpret a statute's meaning "at the time of enactment" "instead of declaring a particular party's reading 'permissible' in such a case").

C.    **PLAINTIFF FAILS TO PLEAD THAT ANY OF THE TEXT MESSAGES WERE "TELEPHONE SOLICITATIONS" WITHIN THE MEANING OF THE DNC PROVISION.**

Unable to rebut Foley's arguments (Mot. at 14–15) that his Complaint fails to plead the requisite, plausible factual allegations that any of the challenged text messages were "telephone solicitations" (*i.e.*, messages whose purpose was to encourage Plaintiff to purchase, rent or invest with Foley), Plaintiff resorts to reliance on factual assertions made for the first time in his Opposition and accompanying Declaration. Opp. at 29. These assertions do not and cannot save his claim because, as demonstrated in Section I above, the law requires that this Court disregard them and instead only consider factual allegations made in the Complaint. Plaintiff does not dispute that his Complaint pleads no factual allegations about the content or purpose of nine of the fifteen challenged text messages. Plaintiff, therefore, concedes that his allegations about their mere existence provide no basis for this Court to allow his DNC Provision claim to proceed. *Wilbush v. Ambac Fin. Grp.*, 271 F.Supp.3d 473, 487 n.9 (S.D.N.Y. 2017) ("Where a plaintiff fails to raise claims in opposition to dismissal in the district court, any such claims are waived" (citation modified)). With respect to the remaining six alleged messages, Plaintiff either fails to point this Court to any specific language in their content evincing a purpose to encourage him to "purchase or rent" or "invest" in any Foley goods or services or selectively quotes language devoid of its informational purpose. This too is concession as to the accuracy and merit of Foley's arguments (Mot. at 14–15) that there is no such purpose. *See id.* Instead, the language of the text messages (Compl. at ¶ 23) reveals that they are not "telephone solicitations" at all, but rather informational messages not actionable under the DNC Provision as a matter of law. Mot. at 14–15.

D.    **PLAINTIFF FAILS TO PLEAD PLAUSIBLE FACTUAL ALLEGATIONS IN THE COMPLAINT THAT HIS PURPORTED CELL PHONE IS "RESIDENTIAL."**

Again relying on his improper Declaration, Plaintiff also argues (Opp. at 13–15) that this Court should reject Foley's arguments (Mot. at 10–12) to dismiss his DNC Provision for failure to

plead the requisite plausible, factual allegations that his purported cell phone number is "residential." This argument fails at its inception because (a) as explained in Section I above, Plaintiff cannot save his claim through factual assertions made for the first time in his Declaration, and (b) Plaintiff points to no factual allegations in the Complaint to support it. That is the end of the inquiry. Plaintiff's DNC Provision claim must be dismissed for want of the requisite factual allegations in the Complaint to sustain it. Mot. at 10–12.[6] Indeed, contrary to the arguments in his Opposition (at 13–15), Plaintiff's conclusory allegations in the Complaint that the at-issue telephone number is "residential, noncommercial," "use[d] . . . for personal, residential, and household reasons," and "assigned to a residential telephone exchange service" are no different than the unsuccessful *Gillam* plaintiff's "conclusory allegations." *Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (holding plaintiff failed to state a claim on "conclusory allegations" that telephone number was "not associated with a business, has never been held out by [p]laintiff to the public, and is primarily for personal use"). Merely emphasizing the word "reasons" or "residential" does not meet Plaintiff's burden to "plausibly allege *facts* establishing that his cellular telephone is actually used for 'residential purposes.'" *Id.* (emphasis added). Without such facts, Plaintiff's DNC Provision claim cannot survive. *See, e.g.*, *Regan*, 2021 WL 1063320, at *8 n.6 (dismissing claim where complaint alleged no necessary facts after disregarding "plaintiff's reliance" on evidence outside complaint, which "was improper" and "[could] not be considered in adjudication of a 12(b)(6) motion").

---

[6] Plaintiff asserts in his Opposition (at 3, 13–14) and Declaration (at ¶ 9) that Foley texted him at a different number than the one listed in his judicially-noticeable DOT registration. But the Complaint, Opposition and Declaration provide this Court no real basis to reach such a conclusion. That is because none identify the full number at which Plaintiff claims Foley texted him. Instead, Plaintiff merely identifies "(484) XXX-XXXX" in each document. Compl. at ¶ 17; Opp. at 3; Decl. at ¶¶ 2–4. Foley is thus not in a position to respond further to Plaintiff's argument in this Reply. In an effort to avoid this issue and so that Foley could have a fair opportunity to evaluate and respond to Plaintiff's argument, Foley requested, in writing, that Plaintiff's counsel provide the number referenced in his submissions on March 18, 2026. As of the time of this filing, Plaintiff's counsel has not responded to that request.

7

### III.    COUNT II FAILS TO STATE A CLAIM AND MUST BE DISMISSED.

As demonstrated in the Motion (at 15–17), Plaintiff's Caller ID Rule claim (Count II) should be dismissed for want of a private right of action and lack of Article III standing. Plaintiff's Opposition arguments miss the mark and support no different conclusion.

### A.    THERE IS NO PRIVATE RIGHT OF ACTION FOR A VIOLATION OF 47 C.F.R. § 64.1601(e).

A clear majority of courts agree that there is no private right of action to enforce the Caller ID Rule set forth in 47 C.F.R. § 64.1601(e)(1). *E.g., Dobronski v. Transamerica Life Ins. Co.* ("*Transamerica*"), 13 N.W.3d 895, 905–06 (Mich. App. 2023) (explicitly rejecting Plaintiff's statutory interpretation argument, observing that "[m]ost courts have concluded that there is no private right of action," and holding no private right of action exists); *Dobronski v. Juliasangel Mkt., LLC*, 2025 WL 2659265 at *11 (E.D. Mich. Sept. 17, 2025) ("The majority of courts have held that §64.1601(e) was promulgated under 47 U.S.C. §227(d), which does *not* include a private right of action"); *Dobrowski v. Selectquote Ins. Servs.*, 462 F.Supp.3d 784, 789–90 (E.D. Mich. 2020). This Court should follow their lead and dismiss Count II for the reasons set forth in the Motion (at 15–17).[7]

The regulatory history of the Caller ID Rule reinforces the majority view. In a 2003 Order, the FCC stated that "Caller ID . . . should increase accountability and provide an important resource *for the FCC and the FTC* in pursuing enforcement actions against TCPA and TSR violations."

---

[7] In finding a private right of action, a few district courts have reasoned (speculatively) that "Section 64.1601(e) must have been promulgated under *some* part of the TCPA" and held that Section 227(c) was the "only subsection with the breadth of scope to cover § 64.1601(e)." *See Dobronski v. Selectquote Ins. Servs.*, 773 F.Supp.3d 373, 376 (E.D. Mich. 2025). That speculative reasoning is not persuasive. Indeed, "[w]here a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is highly improbable that Congress—or here, the FCC—absent mindedly forgot to mention an intended private action." *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017) (citation modified); *see also Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) ("Congress will be explicit if it intends to create a private cause of action."); *In Re Rules & Regs. Implementing the TCPA*, 18 F.C.C.R. 14014, 14068 ¶ 90 (describing the Caller ID Rules as a way to support do-not-call rights). That is the case here. The silence of Congress and of the FCC when promulgating the Caller ID Rule communicates no intent to shoehorn a private right of action into the Rule.

*Rules & Regs. Implementing the TCPA of 1991*, 68 Fed. Reg. 44144, 44166 ¶ 124 (2003) (emphasis added). Absent from the Order was any mention of *private individuals* pursuing claims against telemarketers who violated the Caller ID rule. *See id.*

### B.    PLAINTIFF DOES NOT PLEAD ANY INJURY FOR A TECHNICAL VIOLATION OF THE CALLER ID RULE AND THUS LACKS ARTICLE III STANDING.

Recognizing the merit of Foley's lack of Article III standing arguments (Mot. at 17), Plaintiff attempts to remedy the defects in his Complaint with new assertions of purported harm in his Declaration. This effort fails because his new assertions fail to establish the necessary concrete, particularized injury caused by the alleged violation of the Caller ID Rule by Foley.[8]

Plaintiff asserts that because text messages he received did not include Caller ID information, "he had no idea who was truly [texting] him." Plaintiff Opp. at 36. But this claim is belied by his Complaint; the face of the alleged texts clearly identify Foley as the sender, and in five of the six texts reproduced, include specific contact information for Foley.[9] Compl. at ¶ 23. Moreover, the Declaration itself makes clear that Plaintiff suffered no confusion about who was texting him; Plaintiff purportedly saved the numbers texting him as "Foley DOT" on his phone, asked that Foley stop contacting him via email, and now brings this lawsuit against Foley. Decl. at ¶¶ 23, 26. Plaintiff cannot credibly assert that he was "deprived" of information "needed to exercise [his] statutory rights" (*Id.* at ¶27) when the very text messages he complains of have the exact information sought by his Caller ID Claim.

---

[8] While this Court must disregard the Declaration in resolving Foley's Rule 12(b)(6) arguments, Foley acknowledges that "[t]o resolve jurisdictional issues [like standing], [a court] *may* consider affidavits and other materials beyond the pleadings, but . . . cannot . . . rely on conclusory or hearsay statements contained in the affidavits." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) (emphasis added).

[9] Indeed, three of the text messages reproduced in the Complaint included phone numbers for Foley. But Plaintiff did not call those numbers to request Foley stop texting him, instead calling the numbers that texted him. *See* Compl. at ¶¶23, 29–30.

Even assuming *arguendo* that Plaintiff is correct, an informational injury of this kind cannot satisfy Article III standing, which requires a showing of "a current or past harm beyond the statutory violation itself." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022). Plaintiff also cannot rely on mere "technical violations" of a regulation. *See Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 305 (2d Cir. 2024). Rather, Plaintiff "must show some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308. He has not. Here, Plaintiff complains he received the information required by the Caller ID Rule—Foley's name and contact information—but did not receive the information in the *format* that the Caller ID Rule purportedly requires and that he would have preferred. *See* Opp. at 37. These technical violations cannot establish Article III standing, and Count II must therefore be dismissed.

## CONCLUSION

For the reasons stated above, Foley respectfully requests that the Court dismiss both Counts of Plaintiff's Class Action Complaint for failure to state a claim.

**ORAL ARGUMENT REQUESTED**

10

Dated:  March 24, 2026

Respectfully submitted,

*/s/ Brooks R. Brown*

Brooks R. Brown (*phv209167*)
GOODWIN PROCTER LLP
100 Northern Ave
Boston, MA 02210
Tel.: +1 617 570 1000
Fax: +1 202 204 7216
BBrown@goodwinlaw.com

Jaime A. Santos (ct31237)
Jacqueline Odum (*phv209169*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 213 260 8106
JSantos@goodwinlaw.com
JOdum@goodwinlaw.com

*Counsel for Foley Carrier Services, LLC*

11

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 24, 2026, I caused a true and correct copy of the foregoing

to be served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Brooks R. Brown*
Brooks R. Brown
