# Exhibit A

2026 WL 879244
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Chelsea JAMES, on behalf of herself and all others similarly situated, Plaintiff,

v.

SMARTER CONTACT, INC., and Smarter Contact Holdings, LLC, Defendants.

Case No. 8:25-cv-1657-KKM-SPF
|
Signed March 31, 2026

**Attorneys and Law Firms**

Alexander D. Kruzyk, Bryan Andre Giribaldo, Pardell, Kruzyk & Giribaldo PLLC, Austin, TX, Logan Andrew Pardell, Pardell, Kruzyk & Giribaldo, PLLC, Boca Raton, FL, for Plaintiff.

Blake Landis, Troutman Amin, LLP, Boca Raton, FL, James Allen Peterson, Peterson Legal P.A., Oakland Park, FL, for Defendants.

## ORDER

**\*1** Chelsea James sues Smarter Contact, Inc., and Smarter Contact Holdings, LLC, (collectively, Smarter Contact) for violations of the Telephone Consumer Protection Act (TCPA). Compl. (Doc. 1). Smarter Contact moves to dismiss the complaint for failure to state a claim. Mot. (Doc. 28). James opposes. Resp. (Doc. 35). Smarter Contact replies in support. (Doc. 38). Because a "telephone call" as understood in 1991 did not encompass a text message, I grant Smarter Contact's motion.

### I. BACKGROUND

James resides in Arizona and has registered her cellular telephone number with the National Do-Not-Call Registry since 2008. Compl. ¶¶ 5, 15. Beginning in July 2023, James received "numerous text messages from a rotating series of phone numbers" associated with "Joe Homebuyer." *See id.* ¶ 16. These text messages asked James to "[s]end me what you would accept for [James's home]" and made similar attempts to engage in discussions about buying James's home. *See id.* Joe Homebuyer is a company that pairs "numerous services with their offers to purchase properties from consumers." *Id.* ¶ 19. These services include "arranging of title, escrow, preparing paperwork, and all other ancillary services associated with the purchase or sale of a home, including the preparation and handling of all purchase and sale-related paperwork for sellers, arranging for title, escrow, and closing services, and even providing moving and transportation for sellers." *Id.* ¶ 20.

Because she had not consented to receiving those text messages, James sued Joe Homebuyer. *Id.* ¶ 21. Through discovery in that lawsuit, James learned that Smarter Contact, not Joe Homebuyer, "was the subscriber and user of those telephone numbers during the relevant time period." *See id.* ¶¶ 22–23. James dismissed that lawsuit. *Id.* ¶ 24.

Smarter Contact runs "a large-scale telemarketing platform" that can "(1) identify persons to send telemarketing text messages to irrespective of any efforts to obtain their prior express written consent; (2) skiptrace contact information for those telephone numbers; (3) draft the content of the text messages that will be sent to those persons; and (4) actually send the text messages." *Id.* ¶¶ 25, 27. Smarter Contact "sent, or caused to be sent, over twenty advertisement or telemarketing text messages to [James's] cellular telephone between 2023 and the present, both in the guise of Joe Homebuyer-branded marketing, and Defendants' other clients' marketing." *Id.* ¶ 46.

James asserts two claims against Smarter Contact. *Id.* ¶¶ 83–99. Both allege that the text messages that Smarter Contact sent to James violate 47 U.S.C. § 227(c)(5). *See id.* The first claim alleges a violation of the "TPCA's implementing regulation, 47 C.F.R. § 64.1200(c), [which] provides that '[n]o person or entity shall initiate any telephone solicitation' " to individuals like James who have "registered [their] telephone number on the national do-not-call registry." *Id.* ¶ 85. The second claim alleges a violation of 47 C.F.R. § 64.1200(d)(4), which provides that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* ¶ 93. James also seeks to assert these claims on behalf of two classes of plaintiffs. *See id.* ¶¶ 54–82.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

## II. LEGAL STANDARDS

**\*2** Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.*(quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.*(quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.*(quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929.

## III. ANALYSIS

James brings both claims under Section 227(c)(5) of the TCPA, which provides a private right of action for "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added); *see* Compl. ¶¶ 83–99. The statute does not define "telephone call."

The parties agree that *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 606 U.S. 146, 145 S.Ct. 2006, 222 L.Ed.2d 405 (2025), allows district courts to interpret "the Telephone Consumer Protection Act unbound by the FCC['s interpretations]" and precedent that deferred to FCC interpretations. *See* Resp. at 2 (citation modified); MTD at 2.

At present, there are no binding Eleventh Circuit or Supreme Court opinions defining "telephone call,"[1] and district courts exercising this freedom reach opposite conclusions. *See, e.g.*, *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025) (concluding that text messages are included in "telephone call"); *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at \*3 (N.D. Ohio Mar. 3, 2026) (concluding that text messages are not included). Smarter Contact contends that the courts that have concluded that text messages are not included within the ambit of Section 227(c)(5) are correct. *See* MTD at 5– 8. Thus, "both of [James's] causes of action fail to state claims" because she alleges only that she received text messages. *Id.* at 8. I agree.

**\*3** When determining a statute's meaning, courts "seek[ ] to afford the law's terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez v. Garland*, 593 U.S. 155, 160, 141 S.Ct. 1474, 209 L.Ed.2d 433 (2021); *see also Bostock v. Clayton County*, 590 U.S. 644, 654, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment."). "As in every statutory-interpretation case, 'we start with the text—and, if we find it clear, we end there as well.' " *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022) (quoting *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020)).

The ordinary public meaning of "telephone call" in 1991 did not include or embrace a modern text message. Dictionaries from before and after the TCPA's enactment define the noun "call" as "an act or instance of telephoning," The Random House Dictionary of the English Language 297 (2d ed. 1987), or "the act of calling on the telephone," Merriam-Webster's Collegiate Dictionary 162 (10th ed. 1993). "Telephone" was defined as "an apparatus, system, or process for transmission of *sound or speech* to a distant point," The Random House Dictionary of the English Language 1952 (2d ed. 1987) (emphasis added), and "an instrument for *reproducing sounds* at a distance...one in which *sound is converted* into electrical impulses for transmission by wire," Merriam-Webster's Collegiate Dictionary 1211 (10th ed. 1993) (emphasis added). Thus, a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of "telephone call" from 1991.[2] *See also Stockdale*, 2026 WL 591842, at \*3 (reaching the same conclusion after examining the definitions of "call" and "telephone" found in an edition of Merriam-Webster's New Collegiate Dictionary published in 1990).

This conclusion remains even if one improperly uses definitions of the verb form of "call": "to communicate or try to communicate with by telephone," The Random House Dictionary of the English Language 297 (2d ed. 1987), and "to get or try to get in communication with by telephone," Merriam-Webster's Collegiate Dictionary 162 (10th ed. 1993). In Section 227(c)(5), "call" is used as a noun, *see id.* ("received more than one telephone call"). Nonetheless, James and other courts rely on the arguably more expansive definition of the verb "call." *Compare* Webster's Third New International Dictionary 318 (1993) (defining the verb "call" as "to communicate with or try to get into communication with a person by telephone"), *with* Resp. at 10–11 (citing *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 953–54 (9th Cir. 2009), which relied on the definition of the verb "to call" from the 2002 version of Webster's Third New International Dictionary), *and Howard v. Republican Nat'l Comm.,* 164 F.4th 1119, 1123–24 (9th Cir. 2026) (citing *Satterfield*'s definition and using the same definition from the 1981 version of Webster's Third New International Dictionary), *and Wilson,* 811 F. Supp. 3d at 637–38 (citing *Satterfield*'s definition, using the definition of the verb "call" from the 1993 Webster's Third New International Dictionary, and using a definition from a 1989 dictionary that largely mirrors other definitions of "call" as a verb).

 **\*4** James and these other courts compound the error by neglecting to consider the modifying effect on "call" from "telephone" as understood in 1991. *See, e.g.*, Resp. at 10–11 (giving no consideration to the definition of "telephone"); *Howard,* 164 F.4th at 1123–24 (same); *Wilson,* 811 F. Supp. 3d at 637–38 (same); *cf. Fernandez v. Seaboard Marine LTD.,* 135 F.4th 939, 949 (11th Cir. 2025) ("[I]t is an elementary principle of statutory construction that, in construing a statute, we must give meaning to all the words in the statute." (quoting *Legal Env't Assistance Found., Inc. v. EPA,* 276 F.3d 1253, 1258 (11th Cir. 2001)). Thus, after limiting this portion of their analysis to the definition of the verb form of "call," James and other courts conclude that a text message is included within the meaning of "telephone call." This is error because, even using the definition of "call" as a verb, a text message is not communicating or attempting to communicate with someone by reproducing sounds at a distance. Therefore, a text message is not included within the meaning of "telephone call" under this approach.[3]

Properly considering the modifying effect of "telephone" does not, as one court worries, "prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute." *Alvarez v. Fiesta Nissan, Inc.,* No. 7:25-CV-00343, 2026 WL 202930, at \*5 (S.D. Tex. Jan. 26, 2026). The meaning of "telephone" clarifies the understanding of the much broader "call;" it does not carve out from the statute acts that are embraced by the ordinary public meaning of "telephone call" in 1991 but that are done using a telephone with capabilities beyond simply reproducing sound at a distance. "[V]oice calls from almost every modern telephone—most of which can text, among many other capabilities," *id.*, do qualify as "telephone calls" under the TCPA because they are calling or communicating by using an instrument that is reproducing sounds at a distance.

That Section 227(c)(5)'s "telephone call" does not include text messages is further confirmed by the addition of "text message" or "text messaging service" elsewhere in the TCPA through later amendments to the statute. *See, e.g.*, 47 U.S.C. § 227(e)(8)(A)–(B) (distinguishing between "a call made using a voice service" and "a text message sent using a text messaging service"). "When Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Fernandez,* 135 F.4th at 958 (citing *Pulsifer v. United States,* 601 U.S. 124, 149, 144 S.Ct. 718, 218 L.Ed.2d 77 (2024)).

James raises three other arguments in support of her understanding of "telephone call." James's first argument relies on the undisputed fact that the FCC has interpreted the TCPA as applying to both voice calls and text messages. *See* MTD at 8; Resp. at 5. James avers that I should "infer that Congress intended to retain the FCC's interpretation of (and implementation of regulations under) the TCPA." Resp. at 7. This is because "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change," *id.* at 6 (quoting *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)), and Congress amended the TCPA multiple times after the FCC interpreted the statute as applying to text messages, *see id.*

 **\*5** This argument fails because, "if we find [the statutory text] clear, we end there as well.' " *Heyman,* 31 F.4th at 1318. The text of Section 227(c)(5) is clear, ending the inquiry. Further, the presumption of Congress's awareness and intent that James calls for is belied by Congress's amending the TCPA to add "text message" elsewhere in the statute. "Congress understood the pertinent distinction and

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

legislated mindful of the distinction." *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025).

James's second contention is that Section 227(b)(1)(A)'s use of "any call" when proscribing certain transmissions to "a paging service" or a "cellular telephone service" requires one to conclude that "call" "encompassed text transmissions" because "a typical paging device...would have displayed an incoming message as written text." Resp. at 12. James claims that to find otherwise violates the canon "that identical terms within an Act bear the same meaning." *Id.* (quoting *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)). Here, James repeats her error of ignoring the modifying "telephone" attached to "call" in Section 227(c)(5). Section 227(b)(1)(A) deals with "a broader prohibition on 'any call' " and not "the statutory term 'telephone call' at issue here." *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

Finally, James avers that this result "upend[s] the normal operation of the statute to undermine consumer privacy rights." Resp. at 14. Thus, James asks me to liberally construe the TCPA to benefit consumers because "Congress did not intend this." *Id.* I decline to do so. "[My] role is not to look beyond clear language to ascertain Congress's purpose." *Davis*, 797 F. Supp. 3d at 1274. Indeed, "the text of the relevant statute provides the best evidence of congressional intent." *Greenlaw v. United States*, 554 U.S. 237, 258, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) (Alito, J., dissenting). "Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) (citing *Connecticut*

*Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). "The language of the statute is entirely clear, and if that is not what Congress meant then Congress has made a mistake and Congress will have to correct it." *Conroy v. Aniskoff*, 507 U.S. 511, 528, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring in the judgment).

## IV. CONCLUSION

Because Section 227(c)(5) does not apply to text messages, both of James's causes of action fail to state a claim and I need not consider the parties' other arguments. I dismiss with prejudice because amendment would be futile. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

Accordingly, the following is **ORDERED**:

1. Smarter Contact's Motion to Dismiss (Doc. 28) is **GRANTED**.

2. James's Complaint (Doc. 1) is **DISMISSED with prejudice**.

3. Smarter Contact's Motion to Strike Class Allegations (Doc. 29) is **DENIED as moot**.

4. The Clerk is directed to **ENTER JUDGMENT** which shall read, "This case is dismissed with prejudice." The Clerk is further directed to **TERMINATE** any pending motions and deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, March 31, 2026.

## All Citations

--- F.Supp.3d ----, 2026 WL 879244

Footnotes

1    James quotes *Campbell-Ewald Company v. Gomez*, for support: "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." Resp. at 8 (quoting 577 U.S. 153, 156, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), *as revised* (Feb. 9, 2016)). Courts that have reached contrary conclusions on whether text messages are included within "telephone call" in Section 227(c)(5) agree that this is, at most, persuasive because the Supreme Court merely assumed without deciding that "call" in Section 227(b) included text messages in both *Campbell-Ewald* and in *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2, 141 S.Ct. 1163, 209 L.Ed.2d 272 (2021). *Compare Wilson*, 811 F. Supp. 3d at 640 ("[T]he Supreme Court has repeatedly assumed, without resolving, that § 227(b) applies to text messages."), *with Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (concluding that "telephone call" does not include text messages, noting that "the Court assumed, but did not decide, that issue" and that the language in Section 227(b) is a "broader prohibition on 'any call,' " not "telephone call").

**James v. Smarter Contact, Inc., --- F.Supp.3d ---- (2026)**

2026 WL 879244

2    Other forms of communication that would not necessarily be considered a telephone call by modern Americans, such as audio messages or "voice texts," might fit within the ordinary public meaning of "telephone call" from 1991. These messages involve the reproducing of sounds originally recorded by the sender's phone. Such messages are not at issue here. James's allegations involve only "traditional" text messages. *See* Compl. ¶ 16.

3    Contrary to Smarter Contact's argument, the fact that text messaging was not possible when Congress enacted the TCPA in 1991 is not dispositive. *See* MTD at 6; Telephone Consumer Protection Act of 1991, Pub. L. No. 102–243, 105 Stat. 2394 (1991). "In their full context, words mean what they conveyed to reasonable people at the time they were written —with the understanding that general terms may embrace later technological innovations." Antonin Scalia & Bryan A. Garner, Reading Law: the Interpretation of Legal Texts 16 (2012). If in 1991, "telephone call" was understood to have a sufficiently broad meaning, the fact that text messaging did not exist would not prevent "telephone call" from embracing modern text messages. But as explained, "telephone call" carried a more limited meaning, one tied to sound.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---